May it please the court, Norm Singleton for Aaron Thompson Appellant, who asserts that under the trespass test, a Fourth Amendment search occurs when a government agent covertly videos, video records the interior of a home because that exceeds the license implied by the invitation to enter. Facts in this case are straightforward. Agent 292 entered the home with an intent to search and a license that permitted only his visual inspection. He exited with a permanent digital record that could be magnified, enhanced, minutely examined. So here's a problem I have. You know, policemen can use a radio transmitter. They can record conversations with a defendant when an informant goes in, in the defendant's home, at other locations. That doesn't violate the Fourth Amendment. I don't see what the difference is with the video recording. All he's doing is recording what he saw when he went in, he was invited in. The invitation doesn't provide the consent to conduct a search. But what I'm saying is, if the Supreme Court has said that an agent of the police can go in and have a body recorder and record what's going on in talking to a potential defendant or putative defendant, why can't you use a video camera? Well, those cases, notably US v. White, didn't apply the privacy expectations of the individual as opposed to the conduct of the government. I think that the audio recording is much closer under the trespass test. I really don't have an opinion on that. But I think in video it's clear that that exceeds the scope of any implied license based on custom to enter a home. Well, he could testify. Wouldn't you agree to anything he sees, right? I think the existing precedent, basically Lewis, establishes that. How is that different than having him recorded what he sees? Well, for the recordings, the video recordings, they record what the agent sees. It also records what he didn't notice or couldn't describe. And the problem is not entirely with the recording, the equipment, it's with the images which can be studied to provide a wealth of detail. It's the impact it's going to have, right? I beg your In the home, everything's protected. And the camera takes everything. Well, you know, this is a home, at least from the outside, that once he gets in, he's let in for a certain purpose and executes that purpose where he buys drugs. Doesn't that sort of diminish the home appearance and put it into something more than just that, what he sees? If I'm correct, the court's referring to the contraband exception that, you know, that if it's not a search, if it only reveals the presence of illegal substances. And I think that Kylo, as underscored by Jardines, indicated that just because it's illegal, if it's in the home, it's a definition of a home, and what the activity goes on and what they do there. Now, it looks like a house, I guess it's a house. Well, it's undeniable that it was a residence. In the description of the... I'm not sure this is in the record, but it was obvious from reviewing the discovery materials that people lived in this home and there were the typical appurtenances of everyday life in there. This is... The government emphasized in its responses that the equipment used wasn't sense-enhancing, and that's not important at all in the trespass test. To paraphrase Jardines' court, it's not the camera that's the problem, it's the behavior that involved the use of the camera, that is, entering a constitutionally protected area with the intent to conduct a search. But it's very clear that the government can use informants, and that the informant doesn't have to disclose their identity, that doesn't render the consent invalid, and the agent can discover information once they get into the home. I still don't understand what, how you draw a distinction between video recording equipment and audio recording equipment. I don't know if audio equipment would hold up when the trespass test... If you know, if you've got a body wire on and that's being recorded outside the premises, and the person's in there with permission, I don't see that as being a trespass. But the video recording exceeds the scope of any invitation. If you look at the scope of consent as analogous, it's what a reasonable person would typically understand from the exchange between the between the government agent and... But you don't, you don't, okay let me put it this way, if he had no video equipment, he goes in, he sees things, he testifies at trial exactly to what he saw in the apartment, what was on the walls, what was on the floor, what was on the sofa, all of that, he could testify to all that, right? I believe so, yes. Yeah, so all the video does is record what he sees with his eye. But it records so much more. I don't understand what more. I mean it records what he could see. Now if he's in another part, if there's no basis for him to go to another part of the house, let's say he sneaks into some other room, he doesn't have permission and so he kind of does that. He says, oh I'm gonna help the police out. You know, I have, I just have a feeling that maybe the dope is in the basement and he's left alone and he runs down there and there's no basis for it. Well clearly that, that wouldn't be, I mean that's different than he's in the place where he's gonna pick up the drugs. And that's, and I can't, I can't dispute that. But the differences between audio and video are, are just, are, it's, it's a little difficult to describe. All I, but I can say that if Abraham Zapruder had been holding a tape recorder back in November 1963, no one would have ever heard of it. I see that I'm into my time and I will save the remainder for rebuttal. Thank you. Thank you, Counselor. Judge? Thank you. What the defendant is proposing is basically a rule that would undercut undercover work. It just simply wouldn't be happening and it also goes against the great weight of authority. What his complaint really is about the fact that the police gained surreptitious entry into the house by a misrepresentation. Well we know from Lewis and Hoffa and Scherer that the police don't need to comply with that unless they're somehow inducing or planting the crime into the defendant's head to commit this. But they can use misrepresentation and artificial bruise to gain entry. Why instruct us that the simultaneous recording of audio doesn't violate the Fourth Amendment? Because the and there's really no distinction here as the court has noted. There's really two factors that are critical here. First, the magistrate's findings in its report and recommendation found, one, that the audio recorded nothing more than what the defendant could see and hear and that the defendant, or rather the informant, never went anywhere other than where he was allowed to go to conduct the transaction. And again, this is not a house as the magistrate found. It wasn't leave it to beaver with with Chloris Leachman or whoever it was with pearls on in the kitchen. This was a vertically integrated operation in which they had compartmentalized people into the bathroom to provide the drugs outside of the bathroom, which then the defendant then delivered to the informant. Was he under observation when he entered and left? Yes, he was. Because that's the normal. Right. And all that video would actually prove if they weren't watching it is he actually went in and out of that house. Otherwise everything would be his verbal recollection. Right. So I know they really didn't even need to use it for that purpose. Other than that I don't see what the video would do to enhance anything. Well, it doesn't, it didn't enhance, sort of like it didn't enhance special things that he saw. In fact, it was at a deficit because the informant came back. But a picture is worth a thousand words. Absolutely it is and it's unimpeachable at that point and it certainly corroborates the CI. I'm not diminishing it, but you're quite correct that it is a tool that's used so that when they come back and say, gosh, with all the technology that the government has, why should we believe this informant? Well, the answer is here's a video of it. I've been practicing long enough that I can remember we didn't even do anything like that and I can remember that argument being made many times at the trial court level. And I always thought it was humorous because I thought, well, how would you ever do that? Because I was imagining these giant cameras, but neither here nor there. The point is is that what you have is a situation where he didn't exceed his license, he went in there to get drugs, he got drugs. The video simply recorded that and not that great, wasn't as high resolution as a person's vision according to the magistrate court, and didn't exceed even the boundaries of perception. It was less than 180 degrees. So you're really dealing with a camera that was less effective than the informant and didn't capture the information on the microwave. It's kind of blurry or something. Yes, exactly. So as a practical matter, you know, even though the defendant may wish to imagine the parade of horrors in terms of awful things that could happen with allowing this, that's not the case here. The case here is video equipment that didn't exceed what a normal ordinary guest would perceive with their own censored perception. As stated in the brief, the defendant's attack is on the manner that the informant recorded what was voluntarily revealed to him, but he surrendered any expectation of privacy and in the activities and even if his consent was obtained by ruse, and trespass simply doesn't exist here when he was invited in. The mere fact that a video recording provides better documentation doesn't invalidate the license Thompson gave Tanner at his invitation engaged in the drug transaction, and for these reasons we think that district court found no Fourth Amendment violation and we request that this court affirm that decision and judgment and conviction order the court. Unless the court has any questions. Thank you. You have two minutes, counsel. Thank you, Your Honor. This is a question of first impression not only in this circuit but the federal courts, the application of the trespass test to these facts and like in Kylo, the rule the court adopts today should consider that other more sophisticated technology already in use or under development and you know a person doesn't have to spend too much time on the internet before you're finding things like the x-ray cameras that can see through objects even clothes, a handheld radar system that can detect persons through walls. What's coming next? Retinal, you know, concealed retinal scanners. See, but we aren't there yet and so that, yeah, going through walls and everything that certainly wouldn't be That's true, you know, but the court can set a baseline bright line rule at video that court that can guide courts in the future as emerging technology comes into play. I still don't, and perhaps you can explain to me, what's the difference between testifying what I see in this courtroom and what a video recording of the courtroom is. I can testify to exactly the same thing that that shows on that recording. Gannon? A person like myself who listens to football on the radio and watches it on TV can state that you can never possibly describe, as the court said, a picture is worth a thousand words or more and those words are not always forthcoming. Finally, just a quick, just a word about the questioning, the appropriateness of entrusting to the executive branch a tool so amenable to misuse. The police discretion to use this is almost unlimited and the permissible ruses are also almost unlimited. The point is not that this tool should be taken from the police, but when they use it they should get a chance to explain the five W's and the H's to a detached and neutral magistrate. Thank you. Thank you. The case will be taken under advisement.